MARIA, The (RELF v.). See Case No. 11.692.
MARIA, The (SPRAGUE v.). See Case No. 13,253.

---

## Case No. 9,076.
### MARIA v. WHITE.
[3 Cranch, C. C. 663.] [1]
Circuit Court, District of Columbia. Dec. Term, 1829.

SLAVERY—MARYLAND IMPORTATION ACT—SUIT FOR FREEDOM—RESIDENCE—INTENTION.

1. A slave was brought into this county by her master, a delegate from the territory of Florida, to wait upon his family while attending congress; and, at the end of the session, not being in a condition to be carried back with safety, was left here until the meeting of the next congress, with leave to hire herself out, and receive her wages to her own use, which she did until the return of her master, who was re-elected, and who, at her request, offered to sell her to her husband, a free colored man, residing in Washington, for $400, if he could raise the money, but he could not, and never paid it, or any part of it. The court (nem. con.) refused to instruct the jury that these facts were not evidence of an importation, contrary to the Maryland act of 1796, c. 67.

2. They also refused to instruct the jury, that, upon that evidence, they ought to find their verdict for the defendant; but instructed them that the petitioner is not entitled to freedom under the first section of the act, unless she was brought into this county by the defendant, for sale, or to reside therein; and that the circumstances stated, although found by the jury, are not conclusive evidence that the petitioner was brought into this county with such intent, or for sale; and that the residence contemplated by the first section of the act is a permanent residence, as contradistinguished from a sojournment.

3. The court also refused to instruct the jury, that the defendant's offer and agreement to sell the petitioner to her husband, under the circumstances stated, was evidence of an importation, contrary to the act of 1796, c. 67, unless the jury should believe, from the circumstances given in evidence, that the defendant had no intention, at the time of importation, that she should be sold, or should reside in this county.

The petitioner, negro Maria, claimed her freedom by reason of importation, contrary to the act of Maryland, 1796, c. 67; by the first section of which it is enacted, "that it shall not be lawful to import or bring into this state, by land or water, any negro, mulatto, or other slave, for sale, or to reside within this state. And any person brought into this state as a slave, contrary to this act, if a slave before, shall thereupon cease to be the property of the person or persons so importing, &c., and shall be free." By the fourth section it is provided, "that nothing in this act contained shall be construed or taken to affect the right of any person or

1 [Reported by Hon. William Cranch, Chief Judge.]

persons travelling or sojourning with any slave or slaves within this state, such slave or slaves not being sold, or otherwise disposed of in this state, but carried out of this state, or attempted to be carried." Upon the trial, evidence was given to prove that the petitioner was the slave of the defendant [Joseph M. White], a resident of the territory of Florida, and the delegate in congress from that territory. That he brought the slave to Washington to wait upon his family, while he was attending congress, in the winter of 1828–1829. That she remained with his family during the session; but, at the end of the session, on the 4th of March, 1829, was too far advanced in pregnancy to be removed, with safety, to Florida; and was, therefore, left by her master in Washington. That, at her request, after her confinement, she was permitted by her master, who was reëlected, to hire herself out in Washington, until he should return to congress, in December, 1829; which permission was given by a writing inclosed in a letter to Mr. French, the agent of the defendant. That she accordingly hired herself out, and received her wages to her own use. That the defendant, learning that she had a free husband in Washington, and that she wished to live with him, agreed that if he could raise $400 for him he should have her. That the money was never raised, nor any part of it ever paid to the defendant.

Upon this evidence, Mr. Key, for petitioner, prayed the court to instruct the jury, that if, from the evidence, they found the facts to be as above stated, then the continuing of the petitioner in this county, under such circumstances, is evidence of an importation contrary to the law of 1796, c. 67.

But THE COURT (nem. con.) refused to give the instruction. Whereupon Mr. Swann, for defendant, prayed the court to instruct them, that upon these facts, if believed by them, they ought to find their verdict for the defendant.

Which instruction THE COURT refused to give; but instructed them that the petitioner is not entitled to freedom under the first section of the act of 1796, c. 67, unless she was brought into this county by the defendant for sale, or to reside therein; that the circumstances aforesaid, although proved to the satisfaction of the jury, are not conclusive evidence that the petitioner was brought into this county with such intent, or for sale; and that the residence contemplated in the first section of the act is a permanent residence, as contradistinguished from a sojournment.

Mr. Key then prayed the court to instruct the jury, that "if they believed that the defendant contracted with the husband of the petitioner, (a free man,) for the purchase of the petitioner, at the price of $400, and that the said husband agreed to pay the said sum of money, as the price of the petitioner;

then such contract is evidence of an importation contrary to the act of assembly of 1796. Unless the jury should, from the circumstances given in evidence, believe that the defendant had no intention, when he brought in the petitioner, of her being sold, or residing in this county."

But THE COURT refused to give the said instruction. And CRANCH, Chief Judge, suggested a doubt, whether a slave gained his freedom, under the third section of the act, by being sold within three years after being imported, if he was not originally imported for sale, or to reside.

The cases cited in argument were, Baptiste v. De Volunbrun, 5 Har. & J. 86; Defontaine v. Defontaine, in a note to the former case, 5 Har. & J. 86; Henry v. Ball, 1 Wheat. [14 U. S.] 5; Gardner v. Simpson [Case No. 5,237], in this court, at April term, 1823; Jordan v. Sawyer [Id. 7,521], in this court, at the same term; Stewart v. Nokes, 5 Har. & J. 107.